## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| WILLIE SAMPSON, | Case No.: 3:23-cv-00142-MMD-CSD |
| Plaintiff | **Report & Recommendation of United States Magistrate Judge** |
| v. | Re: ECF No. 31 |
| WILLIAM GITTERE, et al., | |
| Defendants | |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Defendants have filed a motion for summary judgment. (ECF Nos. 31, 31-1 to 31-11, 32 (notice of manual filing).) Plaintiff filed an initial response, which actually was a request for additional time because of medical issues he was experiencing at the time his response was due. (ECF No. 35.) Defendants filed a reply. (ECF Nos. 36, 38-1, 38-2.) Plaintiff was allowed to file a supplemental response. (ECF No. 43.) Defendants filed a document indicating they had nothing substantive to add to their previously filed reply. (ECF No. 45.)

After a thorough review, it is recommended that Defendants' motion be granted in part and denied in part.

### I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this civil rights action pursuant to 42 U.S.C. § 1983. The events giving rise to this action took place while Plaintiff was housed at Northern Nevada Correctional Center (NNCC).

The court screened Plaintiff's First Amended Complaint (FAC), and allowed him to proceed with Fourteenth Amendment due process claims against defendants Walker and Flamm related to his alleged placement in administrative segregation without a hearing or review, and the alleged refusal to allow him to review video evidence in connection with his disciplinary proceeding. The court also allowed him to proceed with First Amendment retaliation claims against Walker, Flamm, and Agle based on the following allegations: Walker improperly back-dated a notice of charges because Plaintiff had filed grievances; Flamm refused Plaintiff access to exculpatory video evidence at his disciplinary hearing and improperly said Plaintiff entered a not guilty plea to assault because of Plaintiff's grievances; and Agle gave Plaintiff improper advice and made representations concerning the filing of his grievance. (ECF No. 6.)

Defendants move for summary judgment, arguing: (1) Plaintiff received reviews of his placement in administrative segregation to satisfy due process, and in any event, Walker and Flamm were not involved in his administrative segregation review; (2) Plaintiff was given an opportunity to review the video evidence in connection with his disciplinary hearing; (3) Defendants did not retaliate against Plaintiff because he was able to file grievances and able to file this action; and (4) Defendants are entitled to qualified immunity.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome

of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations

omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

Plaintiff alleges that on October 25, 2021, he stood in line to receive his morning medication. Another inmate—Taylor—stood behind him in line. On three occasions while in the line, Taylor placed his hand on Plaintiff's backside. The second time, Plaintiff turned around and told Taylor to stop. The third time, Plaintiff turned around and hit Taylor. An hour later, Plaintiff claims he was moved to administrative segregation.

Plaintiff avers that he received notice he would have a hearing for pending charges on October 28, 2021, but the hearing did not occur.

On December 27, 2021, Plaintiff submitted two informal grievances. A week later, Plaintiff asserts that Walker visited Plaintiff and told him she had his notice of charges and was there to conduct a summary inquiry and disposition. She slipped Plaintiff a notice of charges and asked him to sign it. He did so. Walker then asked Plaintiff if he would plead guilty to the charge of assault, but Plaintiff pled not guilty because he felt justified in hitting Taylor as an act of self-defense. Plaintiff also asked to see the video recording that would show he asked Taylor to stop touching him. After Walker left, Plaintiff unfolded the notice of charges and saw that it was blank, with a "run date" or November 4, 2021, which made it appear Plaintiff waived the 24-hour period of service for a preliminary hearing.

Two weeks later, Plaintiff claims that Flamm and another officer conducted a disciplinary hearing. He asserts Flamm denied Plaintiff's request to present the video recording of his interaction with Taylor as evidence in his defense. Plaintiff alleges he pled not guilty at the hearing. Plaintiff claims Flamm told him he had to find Plaintiff guilty of some offense, and asked if Plaintiff would plead guilty to the charge of work stoppage. Plaintiff agreed.

On February 17, 2022, Plaintiff received a form commemorating the disciplinary hearing, and Flamm stated Plaintiff pled guilty to assault with the service date of the notice of charges listed as November 4, 2021. He claims he was not served the notice of charges this date, and he never received the notice of charges he signed for Walker on January 4, 2022.

Plaintiff claims that Walker and Flamm took these actions because Plaintiff had filed grievances.

A month later, Plaintiff submitted a first level grievance. He contends Agle called him into her office and wanted to know why he was filing the grievance. Plaintiff explained he was filing the first level grievance because he had not received a response to his informal level grievance. Agle said she would investigate. She called Plaintiff to her office again in late March 2022, and handed him the informal grievances he filed and said she signed off, even though Plaintiff claimed he never received them. Agle said she was going to straighten out the situation. The denial of the informal level grievances said Plaintiff should raise his complaints at the disciplinary hearing. Plaintiff objected to this because he already had his disciplinary hearing and he filed his first level grievance. He filed a second level grievance at Agle's direction. According to Plaintiff, Agle had him submit the wrong type of grievance.

**A. Fourteenth Amendment Procedural Due Process**

**1. Administrative Segregation**

Walker and Flamm argue that Plaintiff received a review of his placement in administrative segregation the date he was placed in segregation. (Clark Decl., ECF No. 31-11 at 2 ¶ 7; Case Note dated October 25, 2021 at ECF No. 31-6 at 2.) Plaintiff was segregated in Unit 8B. (ECF No. 31-4 at 2.) They assert that he had regular reviews, on January 6, 2022 and February 24, 2022, when he was cleared to return to general population. (ECF No. 31-4 at 2 ¶ 8; Case Notes dated January 6, 2022 and February 24, 2022.) In any event, Flamm and Walker argue that they were not involved in Plaintiff's administrative segregation placement and review.

Plaintiff, on the other hand, argues that he received a notice of an administrative segregation hearing for October 28, 2021, but it did not occur. (ECF No. 43 at 30; ECF No. 43 at 32 (inmate request form asserting that the hearing did not occur).) Importantly, however,

Plaintiff admits that Flamm and Walker were not involved in his placement in administrative segregation (or review thereof). (ECF No. 43 at 4.)

"42 U.S.C. § 1983 creates a cause of action against a person who, acting under color of state law, deprives another of rights guaranteed under the Constitution." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation[.]" *Id*. (citations omitted). In other words, the plaintiff "must show that each defendant personally played a role in violating the Constitution." *Hines v. Yousef*, 914 F.3d 1218, 1228 (9th Cir. 2019), *cert. denied sub nom., Smith v. Schwarzenegger,* 140 S.Ct. 159 (2019) ("inmates must show that each defendant personally played a role in violating the constitution.").

Plaintiff admits that Flamm and Walker did not personally participate in the violation of his rights with respect to his placement in administrative segregation and any review of that placement. Therefore, summary judgment should be granted in their favor as to the Fourteenth Amendment procedural due process claim related to administrative segregation.

**2. Video Evidence**

The Supreme Court has held that when an inmate faces disciplinary charges, due process requires that the inmate receive certain rights, although not "the full panoply of rights" due to a defendant in a criminal prosecution. This includes the right to "call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974).

"If a prisoner must be allowed to present evidence in his defense, it necessarily follows that he must have some right to prepare for that presentation." *Melnik v. Dzurenda*, 14 F.4th 981, 985 (9th Cir. 2021). As such, the right to present documentary evidence in his defense "must

7

generally include the ability to obtain that documentary evidence in the first place." *Id*. at 986 (citing *Wolff*, 418 U.S. at 566). "Similarly, if a prisoner is to be able to respond to evidence presented against him, as a general proposition he should be allowed to know what it is and to examine it, unless there is reason to the contrary." *Id*.

The evidence relied on at Plaintiff's disciplinary hearing includes the statement in the notice of charges by Officer Villa that he reviewed video footage and observed Plaintiff turn towards inmate Taylor and assault him in the face. (ECF No. 31-3 at 2, 5.)

Plaintiff requested to review the video evidence in connection with his preliminary hearing before defendant Walker. (ECF No. 31-1 at 6.) Nothing in the disciplinary hearing summary indicates Plaintiff requested to review the evidence at the disciplinary hearing. Nor does the audio recording of the disciplinary hearing indicate Plaintiff made such a request. Under *Wolff* and *Melnik*, it does not appear to matter whether the request was made before the disciplinary hearing or at the hearing because he is entitled to present evidence in his defense, and "it necessarily follows that he must have some right to prepare for that presentation." *Melnik*, 14 F.4th at 985.

In any event, Flamm contends Plaintiff was given the opportunity to review the video evidence. (Flamm Decl., ECF No. 31-8 at 2 ¶ 6.) Plaintiff disputes this, and maintains Flamm did not allow him to review the video. (ECF No. 43 at 4; ECF No. 5 at 4.)

As such, there is a genuine dispute of material fact regardng whether Plaintiff had an opportunity to review the video evidence in connection with the disciplinary hearing.

Defendants also argue they are entitled to qualified immunity, but this argument is based on the assertion that Plaintiff was allowed to present evidence in his defense (ECF No. 31 at 10);

but, as noted *supra*, there is a genuine dispute of material fact as to whether this was the case. Therefore, Flamm is not entitled to qualified immunity at this juncture.

In sum, Flamm's motion for summary judgment should be denied as to the Fourteenth Amendment due process claim based on the allegation Plaintiff was denied the opportunity to review the video evidence relied on in his disciplinary hearing.

**B. Retaliation**

"Section 1983 provides a cause of action for prison inmates whose constitutionally protected activity has resulted in retaliatory action by prison officials." *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Such a claim consists of the following elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Jones*, 791 F.3d at 1035 (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

An inmate must submit evidence, either direct or circumstantial, to establish a link between the exercise of constitutional rights and the alleged retaliatory action. *Pratt*, 65 F.3d at 806-07. "[A] plaintiff must show that his protected conduct was the 'substantial' or 'motivating' factor behind the defendant's conduct." *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (citation and quotation marks omitted).

Plaintiff's retaliation claims are based on the allegation that adverse action was taken because Plaintiff filed informal level grievances on December 27, 2021. Plaintiff asserts that: (1) Walker improperly backdated a notice of charges; (2) Flamm refused him access to exculpatory video evidence at the disciplinary hearing, and lied on the disciplinary form that

Plaintiff entered a plea of guilty to assault; and (3) Agle created confusion and made misrepresentations concerning the grievance process.

Defendants have included as an exhibit documentation related to Plaintiff's grievance number 20063132618. (ECF No. 31-2.) Plaintiff's response contains what appears to be the entirety of the informal level grievance for grievance 20063132618 submitted on December 27, 2021, whereas Defendants' exhibit only contains the first page of the informal level grievance. (ECF No. 43 at 45-47.) Plaintiff's response does not provide any other documentation concerning this grievance or the other informal level grievance Plaintiff alleges he submitted on December 27, 2021.

The documentation submitted by the parties indicates that Plaintiffs submitted the informal level grievance for grievance 2006312618 on December 27, 2021, stating that on October 25, 2021, he was taken from Unit 3 to "Mayberry" and spoke to a sergeant who gave him a segregation notice of classification hearing for October 28, 2021. Plaintiff was then taken to administrative segregation. Plaintiff states that after some 60 days in segregation, he had not received adequate notice of the disciplinary violations, and he did not receive a classification hearing as was stated in the form (ECF No. 31-2 at 3; ECF No. 43 at 45-47.) The grievance is signed by the grievance coordinator on January 16, 2022. (*Id*.) The caseworker signed the grievance on March 24, 2022. Robert Hartman issued an improper grievance memorandum rejecting the grievance, stating: "[Y]ou are pending Disciplinary Charges for this incident. You may raise your arguments during the hearing. If found guilty you may then file a Disciplinary Appeal. Please see the unit caseworker if you need assistance with the Grievance Procedure." While the date at the top of the memorandum is January 16, 2022, the date next to the signature is March 24, 2022. (*Id*. at 2.)

Plaintiff submitted a second informal level grievance for grievance 20063132618 "for tracking purposes only" on February 25, 2022. It is signed by the grievance coordinator on March 11, 2022. It is signed by the caseworker on March 21, 2022. (Id. at 5.) Hartman issued another improper grievance memorandum, dated March 11, 2022, stating the grievance was rejected because it was missing the previously submitted informal grievance and the response. It states that the resubmission must include all previously submitted grievance documents, including responses and/or improper grievance memoranda. (*Id*. at 4.)

Plaintiff also submitted a first level grievance on February 25, 2022, asserting that he was denied an adequate disciplinary hearing, claiming he did not enter a guilty plea to the charge of assault, and he did not receive the notice of charges until January 4, 2022. (ECF No. 31-2 at 6.)

Hartman issued another improper grievance memo, dated March 15, 2022. The memo states that the first level grievance signed February 25, 2022, had not exceeded 45 days, and the caseworker would bring a response to the unit within the next week. It states this submission constitutes the second submission at the first level, and the grievance was still at the first level until April 13, 2022. At the same time, it states this is the third and final rejection and Plaintiff could not resubmit. (*Id*. at 7.)

Plaintiff submitted another first level grievance on March 11, 2022, stating that he can proceed to the next level if he does not receive a response within 45 days. (ECF No. 31-2 at 8.)

Plaintiff then submitted a second level grievance dated March 21, 2022, stating that he has been denied due process in various respects. (*Id*. at 10.)

Hartman issued a letter to Plaintiff dated March 23, 2022, stating that Plaintiff's second level submission signed and dated March 21, 2022, is the fourth rejection of submissions pertaining to grievance 20063132618. It goes on to state that in the improper grievance form

11

dated March 15, 2022, Plaintiff was incorrectly instructed that it was the wrong grievance form. As such, Plaintiff was permitted one last submission at the first level. (*Id*. at 9.)

### 1. Walker

Plaintiff claims that Walker improperly backdated a notice of charges because Plaintiff filed these two informal level grievances. He alleges that Walker came to his cell on January 4, 2022, to give Plaintiff the notice of charges and asked Plaintiff how he was going to plead to the charges, to which Plaintiff responded not guilty. Plaintiff read the notice of charges and signed it, and Walker took it back. She handed him back a document that he thought was the notice of charges he signed. Plaintiff went back to his cell and unfolded the document, but it was blank and was backdated to November 4, 2021.

The notice of charges form states that it was served on Plaintiff on January 4, 2022. (ECF No. 43 at 40.) Walker's declaration similarly states the notice of charges was served on Plaintiff on January 4, 2022. (Walker Decl., ECF No. 31-9 at 2 ¶ 10.) While the preliminary hearing form states the notice of charges was served on November 4, 2021, the notice of charges itself, Walker's declaration, and Plaintiff's own pleading confirm that the notice of charges was not served on him until January 4, 2022. Therefore, it appears that the date on the preliminary hearing form is a mistake. Importantly, there is no evidence that Walker put the date of November 4, 2021, on the preliminary hearing form because Plaintiff filed an informal level grievance.

In sum, there is no evidence of retaliation and summary judgment should be granted in Walker's favor on this claim.

///

///

### 2. Flamm

Plaintiff alleges Flamm refused Plaintiff access to exculpatory video evidence which Plaintiff claims would have showed he was acting in self-defense, and Flamm lied on the disciplinary form by reporting that Plaintiff plead guilty to assault. Plaintiff alleges these actions were carried out because Plaintiff had filed the two informal level grievances.

Flamm asserts Plaintiff was allowed to review the video evidence. In addition, a subsequent page of the disciplinary form and the audio hearing of the disciplinary proceeding indicate Plaintiff did not plead guilty to the charge of assault, but he agreed to enter a guilty plea to the lesser charge of work stoppage.

Importantly, even taking Plaintiff's allegation as true that Flamm did not let him review the video evidence in connection with the disciplinary hearing, there is no evidence before the court to indicate that this was done *because* Plaintiff filed an informal level grievance. There is no evidence that Flamm was even aware of the filing of the grievance. Moreover, while the disciplinary proceeding form initially states that Plaintiff entered a guilty plea to the charge of assault, the form later states, and the audio recording of the hearing confirms, that Plaintiff did not plead guilty to assault, but agreed to enter a plea of guilty to a lesser charge.

Therefore, summary judgment should be granted in Flamm's favor as to the retaliation claim.

### 3. Agle

Plaintiff alleges the responses to the two informal level grievances were late, and Plaintiff went to proceed to the first level. He claims Agle called him to her office to ask why he was submitting a first level grievance when he had not returned the informal grievance. Plaintiff explained he had not received a response to the informal level grievances, so he was proceeding

to the first level. She said she would get back in touch with Plaintiff. The next week, Plaintiff was called back to her office. She said she signed off on the informal on January 16, 2024, and Plaintiff received it thereafter, but Plaintiff maintained he had not received the informal response. She called her supervisor and told Plaintiff not to worry, and they would get it straightened out. He was called to her office again, and she handed him the informal level responses which said Plaintiff should complain at the disciplinary hearing. However, Plaintiff already had his disciplinary hearing. Plaintiff said he could not comply with this because his disciplinary hearing had occurred, and he needed to move to the first level. He avers the first and second level grievances were completed, and his due process claims were denied and not remedied.

Plaintiff's claim is that Agle gave him improper advice related to the filing of a grievance. It is difficult to decipher Plaintiff's allegations, but the claim appears to center on his allegation that Agle claimed there was a response to the informal level grievances while Plaintiff claimed he never received a response.

There is no evidence before the court, however, that Agle made this representation to Plaintiff in order to chill Plaintiff's First Amendment rights, or that Agle engaged in this behavior simply because Plaintiff was filing grievances. The evidence reflects that Plaintiff ultimately proceeded with first and second level grievances, and that issues with the grievance at subsequent levels were addressed by Hartman (not Agle). Therefore, the court finds that summary judgment should be granted in Agle's favor as to the retaliation claim.

14

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING IN PART AND DENYING IN PART** Defendants' motion for summary judgment (ECF No. 31) as follows:

    (1) Summary judgment should be **GRANTED** in favor of Defendants Walker and Flamm as to the Fourteenth Amendment procedural due process claim related to Plaintiff's placement in administrative segregation;

    (2) Summary judgment should be **GRANTED** in favor of Walker, Flamm and Agle as to the retaliation claims; but

    (3) Summary judgment should be **DENIED** as to the Fourteenth Amendment due process claim against Flamm based on the allegation Plaintiff was not permitted to review the video evidence in connection with his disciplinary hearing.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge. Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

///

///

///

15

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: May 18, 2026

_____
Craig S. Denney
United States Magistrate Judge

16